**Case Name:** Kiddy v. Saunders
**Transcript:** [9/22/2023] Kiddy Deposition – DEFENDANT'S DESIGNATIONS

**Pg: 13 Ln: 17 - Pg: 15 Ln: 4**

**Annotation:**

13:17    Q   Again, was it at this period of time, around

18    March 26th of 2020, that you started to learn that

19    Mr. Saunders was having concerns over how your

20    partnership was operating between the two of you?

21        MR. WHITWORTH:  Objection to form.  It calls

22    for speculation.

14: 1        THE WITNESS:  It's in the relative time

2    frame yes, but I think if you look at his first

3    e-mail, it says he is trying to quantify a discussion

4    that was started a couple weeks earlier, so I think

5    there was some inkling that he wasn't happy with

6    something, I didn't know what, prior to this date,

7    but this was the first time that he really expressed

8    his concerns with any clarity.

9    BY MR. KAGAN:

10    Q   All right.  And, again, I understand we have

11    been through it before as far as your disagreement

12    with the analysis about the partnership and where it

13    was going, correct?

14    A   Correct.

15    Q   Let me show you what we marked as your

16    Deposition Exhibit Number 12, which was previously

17    marked as Deposition Exhibit Number 34.  This is an

18    e-mail from Mr. Saunders to you dated May 8, 2020 and

19    it looks like there's some attachments there, but

20    this was sort of the first letter you received about

21    Mr. Saunders loan default notice, is that correct, is

**EXHIBIT**

**C**

**Case Name:** Kiddy v. Saunders
**Transcript:** [9/22/2023] Kiddy Deposition – DEFENDANT'S DESIGNATIONS

```
     22   on this date?
15: 1        A    Minutes before he sent this e-mail, he made
     2   the first mention of loan default -- moments before
     3   he sent this e-mail, he verbally made the first
     4   allegations of a loan default ever to me.
```

**Note:** Designation

**Pg: 15 Ln: 19 - Pg: 16 Ln: 3**

**Annotation:**

```
15:19   Q   Dr. Kiddy, what we've marked as Deposition
     20   Exhibit 13-A, I know we looked at this at your prior
     21   deposition, but this appears to be a printout from
     22   FPAT with regard to your formation of Aither Forensic
16: 1   Engineering, LLC, which appears that you formed on
     2   May 15, 2020; is that correct?
     3        A    That's what it states.
```

**Note:** Designation

**Pg: 16 Ln: 11 - Pg: 17 Ln: 10**

**Annotation:**

```
16:11   Q    I'm showing you what we've marked as
     12   Deposition Exhibit Number 14.  This is a letter from
     13   Mr. Saunders to you dated June 16, 2020 with again a
     14   Kiddy loan event default of notification.  And,
     15   again, this letter being the one where Mr. Saunders
     16   terminated you as a member and employee.  Do you
```

**Case Name:** Kiddy v. Saunders
**Transcript:** [9/22/2023] Kiddy Deposition – DEFENDANT'S DESIGNATIONS

17    recall receiving this?

18          MR. WHITWORTH:  Objection to form.

19          THE WITNESS:  I do.

20          (Kiddy Deposition Exhibit Number 14 was

21    marked for identification and attached to the

22    transcript.)

17: 1  BY MR. KAGAN:

2        Q   And from the letter, it indicated that you

3    would be paid your last paycheck for salary through

4    Friday, June 19, 2020, do you see that?

5        A   Yes, I see that.

6        Q   And, again, were you paid all salary

7    distributions through that date of June 19, 2020?

8        A   I was paid a salary through that date and

9    there were some distributions that were paid during

10    this period as well.


**Note:** Designation



**Pg: 46 Ln: 5 - 14**

**Annotation:**

46: 5  Q   If I were to ask you in general for the time

6    period you were at Beacon Scientific, if you could

7    breakdown your billable time versus all your

8    administrative tasks that you did for the company, do

9    you have an estimation of how much time was billable

10    versus non-billable?

11        A   I would say it's less than 63 percent based

12    on rough hours in a year versus what I worked.  It's

**Case Name:** Kiddy v. Saunders
**Transcript:** [9/22/2023] Kiddy Deposition – DEFENDANT'S DESIGNATIONS

```
13    such a crude guesstimate.  The 63 percent sounds

14    high.
```

**Note:** Designation

**Pg: 47 Ln: 2 - 14**

**Annotation:**

```
47: 2    Q   Did you ever at any point try to analyze

     3    your productivity as a partner at Beacon with regard

     4    to all the hours you were putting in toward the

     5    company versus your billable time to clients that

     6    would generate revenue?

     7        A   No.  I was working my tail off and doing

     8    what needed to get done.  I did a lot of billable

     9    work that wasn't billed, because Mr. Saunders billed

    10    it.  I did a lot of work that was maintained in the

    11    company, administrative, et cetera, et cetera.  I was

    12    getting the work done that needed to be done.  I

    13    wasn't tracking my billable hours versus how much I

    14    worked.
```

**Note:** Designation

**Pg: 53 Ln: 21 - Pg: 55 Ln: 17**

**Annotation:**

```
53:21    Q   Dr. Kiddy, going back to your personal log,

    22    again, looking at -- again, during this time period,

54: 1    going back to March 26th, looking at even May 8th
```

**Case Name:** Kiddy v. Saunders
**Transcript:** [9/22/2023] Kiddy Deposition – DEFENDANT'S DESIGNATIONS

2   when the first default letter was sent and up through

3   -- we can go to June 16th, which is at Line 147.  It

4   looks like on June 16th, which would have been the

5   day that Mr. Saunders sent you the second loan

6   default letter.  Again, it looks like on that day,

7   you had 10 hours of work; is that correct.

8       A   Yes, I was doing something work related for

9   10 hours that day.

10      Q   And, again, if I read sort of the last

11  couple days, June 19th was the last date you were

12  compensated by Beacon, it appears again you worked

13  9:00 a.m. to 4:30, and then it looks like 5 hours on

14  Saturday, correct?

15      A   Yeah.  I mean on June 19th, I had already

16  been cutoff from the e-mail and Dropbox, so I clearly

17  wasn't doing anything that was directly beneficial

18  to -- I shouldn't say that.  I wasn't able to access

19  any of Beacon's systems for that entire week there.

20  I know what I was doing, but it wasn't using any of

21  their systems because he had already cut me off.

22      Q   And I know you covered this in your prior

55: 1  depo.  Was that around June 12th, do you recall?

2       A   June 12th is when some of these things were

3   cut off.  That's when the e-mail and Dropbox were

4   disabled.  Other things were disabled prior to that.

5   At that point, I had no ability to do -- you know,

6   tasked with anything.

7       Q   As of June 12, 2020?

8       A   Yes.

9       Q   All right.  So, again, that whole week, at

**Case Name:** Kiddy v. Saunders
**Transcript:** [9/22/2023] Kiddy Deposition – DEFENDANT'S DESIGNATIONS

```
10   least the hours -- that following week of June 15th,

11   the hours you are logging there, is it fair to say

12   they weren't for Beacon Scientific?

13        A   I don't know if that's entirely true.  I was

14   studying.

15        Q   Studying for clients?

16        A   Studying for my fire investigator

17   certificate and for my PE license.
```

**Note:** Designation

**Pg: 56 Ln: 5 - Pg: 58 Ln: 7**

**Annotation:**

```
56: 5   Q   During the time period you were still with

     6   Beacon Scientific -- again, let's start around

     7   March 26, 2020 up until the time you were provided

     8   the second default notice from Mr. Saunders on

     9   June 16th.  During that time period, were you still

    10   doing administrative work for Beacon during that time

    11   period, be it market, managing, other types of

    12   administrative duties?

    13        A   From March 26th to May 8th, yes.  And after

    14   Mr. Saunders issued the first default notice on

    15   May 8, he cut me out of many of the administrative

    16   systems, so I wasn't able to do everything that I was

    17   doing previously.

    18        Q   Do you recall which systems after May 8th?

    19        A   Well, I can tell you that on May 20th, he

    20   cut me out of the administrative aspects of eBillity.
```

**Case Name:** Kiddy v. Saunders
**Transcript:** [9/22/2023] Kiddy Deposition – DEFENDANT'S DESIGNATIONS

21      Q   Okay.  And did that mean you couldn't input

22   any more of your time in eBillity?

57: 1      A   I could input my time.  I could no longer

2   approve Mr. Bocchicchio's.  Similar for the Expensify

3   app, which did the expenses, on May 18th, he changed

4   his calendar settings, which no longer allowed me to

5   view his calendar such that I can no longer see when

6   reports were due, when things were coming up so that

7   I can no longer assist him on the matters he was

8   working on.

9      Q   After May 8, 2020, did you understand that

10   Mr. Saunders was sort of taking over those roles,

11   some of those administrative roles, did he tell you

12   that he was doing that?

13          MR. WHITWORTH:  Objection to form.

14          THE WITNESS:  He didn't tell me anything.  I

15   just know I wasn't granted access when I tried to do

16   my job.

17   BY MR. KAGAN:

18      Q   Okay.  Any other systems that you were

19   cutout of after May?

20      A   He changed the locks on the storage units

21   where we maintain our equipment and our evidence

22   storage.  He cut me out of systems, but I know he

58: 1   hacked into my e-mail around May 11th.  Somewhere

2   along the lines, he changed the password on I-power,

3   which was our domain hosting service.

4      Q   I-power, is that for the website?

5      A   That's for the website.  It's not the place

6   that has the website, but it's the one that hosts the

**Case Name:**  Kiddy v. Saunders
**Transcript:**  [9/22/2023] Kiddy Deposition – DEFENDANT'S DESIGNATIONS

```
7   domain.  It's the domain server.
```

**Note:** Designation